UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

CASE NO.:

ELIO ELISEO HODGSON CUNNINGHAM

    Plaintiff,

v.

CELEBRITY CRUISES INC., a Foreign for-profit Corporation,

    Defendant.
_____/

## SEAMAN'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, ELIO ELISEO HODGSON CUNNINGHAM (hereinafter "Mr. HODGSON CUNNINGHAM"), by and through undersigned counsel, hereby files his Complaint and sues the Defendant, CELEBRITY CRUISES INC., (hereinafter "CELEBRITY'"), a foreign for-profit corporation whose principal place of business is 1050 Caribbean Way, Miami, FL 33132, and in support states as follows:

### GENERAL ALLEGATIONS

**I.    JURISDICTION**

1. This is an admiralty and maritime cause of action arising under the General Maritime Laws of the United States as well as the Merchant Marine Act of 1920 (the "Jones Act"), 46 USC § 30104, *et seq.*, against the ship owner and/or operator for breach of its nondelegable duties owed to Seafarer and injuries incurred while aboard Defendant's vessel, *MV MEIN SCHIFF 2*.

2. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1333, and pursuant to Article III, Section 2 of the U.S. Constitution.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

4. Venue and jurisdiction is proper in this Court as a substantial part of Defendant, CELEBRITY'S actions and/or omission occurred in the navigable waters of United States, including the navigable waters of the State of Florida.

## II. PARTIES

4. Plaintiff, Mr. ELIO ELISEO HODGSON CUNNINGHAM, is a citizen of Nicaragua, was a seaman, and a crew member aboard the *MV MEIN SCHIFF 2* including but not limited to January 2020 through March 2020.

5. At all times material hereto, Plaintiff, Mr. HODGSON CUNNINGHAM worked aboard Defendant, CELEBRITY's owned vessel, the *MV MEIN SCHIFF 2*, as an Assistant Housekeeper which required him to constantly lift and carry heavy items, including king-sized mattresses, in a fast pace.

6. At all times material hereto, Defendant, CELEBRITY was and/or is the shipowner of the *MV MEIN SCHIFF 2* and is responsible for the duties and responsibilities imposed on Ship-Owners as defined in and in accordance with MLC, 2006. *See*, Box 5 of the Employment Contract dated December 17, 2019 marked as Exhibit 1.

7. Defendant, CELEBRITY, the owner of the subject vessel, was and/or is a foreign for-profit corporation, with its principal place of business and business headquarters located at 1050 Caribbean Way, Miami, Miami-Dade County, Florida 33132. *Id.*

8. At all times material hereto, Defendant, CELEBRITY is a citizen of the State of Florida.

9. At all times material hereto, the *MV MEIN SCHIFF 2* repeatedly sailed in United States territorial waters, regularly calling upon several east coast U.S. ports, including the Port of Miami in Florida.

10. At all times material hereto, the *MV MEIN SCHIFF 2*, a Maltese flagged vessel, her engines, tackle and appurtenances, was, and/or is a self-propelled ocean-going cruise vessel, bearing IMO number 9783576.

11. At all times material hereto, the *MV MEIN SCHIFF 2* was, and/or is, and/or during the pendency of this action, will be in Miami-Dade County, Florida.

12. At all times material hereto, the *MV MEIN SCHIFF 2* has engaged and is currently engaged in the business of trade and commerce within Miami-Dade County, Florida and is amenable to the jurisdiction of this Court.

13. At all times material hereto, Malta is a signatory and/or has ratified the Maritime Labour Convention (2006) (hereinafter "MLC"), the governing international standards on ship safety, human security and quality ship management.

14. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* handles all aspects of compliance with the MLC (2006), the governing international standards on ship safety, human security and quality ship management, out of its Miami headquarters. *See*, Exhibit 1.

15. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* must comply with the MLC (2006).

16. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* handles all aspects of compliance with the MLC (2006) Title 2 "Conditions of Employment" including Regulation 2.3 "Hours of Work and Hours of Rest" and Regulation 2.7 "Manning Levels", out of its Miami headquarters.

17. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* handles all aspects of compliance with the MLC (2006) Title 4, "Health and Safety Protection and Accident Prevention," including Regulation 4.2 "Shipowners' liability", and Regulation 4.3 "Health and Safety Protection and Accident Prevention" out of its Miami headquarters.

18. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* arranges, handles and/or coordinates material aspects of the vessel's management, operation, itinerary, maintenance, and inspections by the United States Coast Guard, P&I Club and Maltese's competent authority.

19. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* accepted the responsibility imposed upon vessel owners as defined in and in accordance with the MLC (2006).

20. At all times material hereto, Defendant, CELEBRITY, out of its Miami headquarters, conducts, manages, and/or oversees its global advertisement and marketing, which includes the subject vessel.

21. Defendant, CELEBRITY, as shipowner of the *MV MEIN SCHIFF 2* has a *nondelegable* duty to provide its crew, such as Seafarer, CALLEJAS, with a seaworthy vessel and a safe workplace.

22. Defendant, CELEBRITY breached its duty and created an unseaworthy condition, rendering the subject vessel unfit for her intended purpose and failed to provide Plaintiff with enough seafarers to complete tasks assigned, work areas with proper air circulation, and competent medical personnel.

23. Defendant, CELEBRITY further breached its nondelegable duty to provide Plaintiff with a safe workplace which rendered the vessel unseaworthy and caused and/or contributed to the injuries, damages, pain and suffering experienced by the Plaintiff.

24. This Court can freely exercise personal jurisdiction over Defendant, CELEBRITY and subject vessel, who at all times material hereto, personally, and/or through its agents:

   a. Operated, conducted, transacted, engaged in, or carried on a business venture in the State of Florida, or has an office or agency in this state and/or county;

   b. Was engaged insubstantial activity within the State of Florida;

   c. Operated vessels in the navigable waters of the State of Florida;

   d. Contracted to supply services or things in whole, or in part in the State of Florida;

   e. Committed one or more of the acts stated in Florida Statutes, Section 48.081, 48.181, or 48.193; and

   f. The acts of Defendant, CELEBRITY as set forth in this Complaint is whole or in part of this county and/or state.

### III. LIABILTY

25. On or about January 17, 2020, Plaintiff, Mr. HODGSON CUNNINGHAM joined the *MV MEIN SCHIFF 2* which Defendant, CELEBRITY owned.

26. In March 2020, shortly after joining the vessel, there was an outbreak of the coronavirus worldwide, which forced cruise ships, including *MV MEIN SCHIFF 2*, to cease all carriage of passengers. Unfortunately, once passengers were debarked from the vessel, seafarers,

including Mr. HODGSON CUNNINGHAM, were required to remain on the vessel to work in unsafe conditions.

27. In March 2020, Plaintiff, Mr. HODGSON CUNNINGHAM was required to work all day on *MV MEIN SCHIFF 2*'s decks in sauna like conditions. As the vessel was located offshore the port of Barbados, these conditions were exacerbated by the heat and humidity.

28. In March 2020, Plaintiff, Mr. HODGSON CUNNINGHAM was also required to work with other crew members in enclosed areas, doing special cleaning tasks. As the vessel was not on a voyage due to the pandemic, Defendant, CELEBRITY had *MV MEIN SCHIFF 2*'s air conditioning system turned off so enclosed areas during the coronavirus pandemic lacked circulated air. This exposed Plaintiff, Mr. HODGSON CUNNINGHAM to coronavirus on a daily basis. Plaintiff, Mr. HODGSON CUNNINGHAM was not provided with sufficient and/or adequate personal protective equipment ("PPE") and often found himself out of breath when he was provided with PPEs.

29. As the vessel was operating with a limited number of seafarers, Plaintiff, Mr. HODGSON CUNNINGHAM was tasked with cleaning assignments that were usually performed by more than one seafarer. This forced Plaintiff to constantly overexert himself to complete the daily tasks he was assigned to do.

30. At all times material hereto, Defendant, CELEBRITY knew and was on notice that the subject vessel had an inadequate number of crew members assigned to the daily cleaning tasks during the pandemic that Plaintiff, Mr. HODGSON CUNNINGHAM was ordered to perform.

31. At all times material hereto, Defendant, CELEBRITY knew and was on notice that the subject vessel did not have an adequate and competent crew, including its medical staff, which rendered the unseaworthy.

32. In March 2020, Plaintiff, Mr. HODGSON CUNNINGHAM visited the ship's infirmary complaining of a cough, congestion, and headaches. Based on his complaints, the ship's medical personnel ordered him to take a combination of medications, including *Novaminsulfon 500 mg* (an anti-inflammatory) and *Moxifloxacin Hexal 400 mg* (a powerful antibiotic).

33. Unfortunately, *Moxifloxacin* is a dangerous medication and is known to cause serious health risks. In fact, The U.S. Federal Drug Administration ("FDA") has assigned *Moxifloxacin* its highest warning on any drug, known as a "black box" warning. The warnings from the FDA included a risk of central nervous system effects, including seizures, convulsions and increased pressure in the patient's head. The FDA also noted that the drug was also known to be dangerous for persons with other health conditions. It warned that the drug could cause people with diabetes to develop low blood sugar which could result in a coma and/or death. It also warned that the drug could cause seizures and change a patient's heart rhythm. As a result of the multiple warnings, the FDA recommended that this drug be used only to treat certain specific infectious conditions if no other treatment option existed.

34. Additionally, Defendant, CELEBRITY not only prescribed this dangerous drug, it also combined the drug with an anti-inflammatory agent that is banned in many countries including the United States and Western Europe because of toxic side effects. Based on FDA warnings, taking *Moxifloxacin* with certain medication, including NSAIDs, could increase potency and the risk of side effects. Despite this, the dangerous combination was prescribed to Plaintiff, Mr. HODGSON CUNNINGHAM.

35. At all times material hereto, Defendant, CELEBRITY knew and was on notice that Plaintiff, Mr. HODGSON CUNNINGHAM had prior medical conditions, including diabetes and

hypertension, and the medication prescribed had the potential of causing increased pressure in his head and severe neurological effects.

36. At all times material hereto, Defendant, CELEBRITY knew and was on notice that if Plaintiff, Mr. HODGSON CUNNINGHAM took the combination of the medication ordered by its medical personnel, that could increase his risk of side effects.

37. Plaintiff, Mr. HODGSON CUNNINGHAM was never informed/warned of the dangers of taking any of the medication he was given. Trusting the competence of the medical personnel provided by Defendant, CELEBRITY, Plaintiff, Mr. HODGSON CUNNINGHAM took the medications and immediately returned to work as ordered. Plaintiff, Mr. HODGSON CUNNINGHAM was not given any work restrictions.

38. On March 22, 2020, Plaintiff, Mr. HODGSON CUNNINGHAM was ordered to clean the areas of Deck 6 on *MV MEIN SCHIFF 2*. Deck 6, like every other deck on the subject vessel, had no air circulation despite having sauna like conditions. As customary, he had to lift and carry heavy items including mattresses and do so at a fast pace. Upon completing those tasks, Plaintiff, Mr. HODGSON CUNNINGHAM was ordered to prepare for deep cleaning using electrostatic cleaning equipment. He proceeded to Deck 9 aft area where he and other crew members were ordered to lift, carry and transport approximately fifty (50) king size mattresses. He was also ordered to move the fifty mattresses to a crew area (away from the common areas), remove each mattress cover and sheet and take those items to the laundry located on Deck 1. This was hard and arduous work aggravated by the heat and diminished number of fellow crew members.

39. While performing his duties (lifting and carrying heavy mattresses and mattress covers) on March 22, 2020, Plaintiff, Mr. HODGSON CUNNINGHAM began to feel ***dizzy, faint***

*and subsequently collapsed*. The nearby crew members informed him that his left side was paralyzed. He began to *convulse* and became *unconscious for nearly 60 minutes*. Plaintiff, Mr. HODGSON CUNNINGHAM was told by Defendant, CELEBRITY's shipboard doctor that he suffered "*unclear consciousness disorder for 60 min suspected intercranial bleeding apoplectic insult*." Unfortunately, Defendant's physicians, ignored and/or failed to consider the medications prescribed by shipboard personnel, the unsafe work conditions, and/or the nature and pace of his laborious job.

40. At all times material hereto, Defendant, CELEBRITY knew or was on notice that Plaintiff, Mr. HODGSON CUNNINGHAM and all housekeepers and assistant housekeepers that were on the vessel during the pandemic were repeatedly ordered to perform strenuous tasks at a rapid pace in sauna like conditions in areas with uncirculated air.

41. At all times material hereto, Defendant, CELEBRITY's vessel was undermanned and/or had inadequately trained crew for the proper transportation of heavy king-sized mattresses from Deck 9 to the crew area.

42. At all times material hereto, Defendant, CELEBRITY's vessel had inadequately trained crew, including its medical personnel which prescribed dangerous medication to seafarers on its vessels, including Plaintiff, Mr. HODGSON CUNNINGHAM.

43. At all times material hereto, Defendant, CELEBRITY breached its ongoing nondelegable duties to provide a seaworthy vessel, and to take all reasonable precautions to protect Plaintiff, Mr. HODGSON CUNNINGHAM and other seafarers aboard its ships from future injuries.

44. Defendant, CELEBRITY knew or was on notice of the unsafe conditions of the vessel and failed to correct the unsafe condition(s).

45. As a result of the unsafe conditions, Plaintiff, Mr. HODGSON CUNNINGHAM was signed of the vessel and hospitalized in Barbados from March 22, 2020 to April 9, 2020 with sequelae of conditions relating to his stroke, including aphasia, pneumonia, right hemiparesis, and facial paralysis. Plaintiff, Mr. HODGSON CUNNINGHAM was provided physical therapy, occupational therapy and speech therapy. The doctors were concerned that he would have another stroke so he was placed on aspirin and atorvastatin for secondary stroke prevention.

46. On April 9, 2020, Plaintiff, Mr. HODGSON CUNNINGHAM was transferred to a rehabilitation facility and was treated for right hemiparesis and global aphasia.

47. On May 4, 2020, an audiometric evaluation revealed decreased hearing in his left ear with overall difficulty processing language.

48. Defendant, CELEBRITY, out of its Miami headquarters arranged, handled and/or coordinated Plaintiff, Mr. HODGSON CUNNINGHAM debarkation from the vessel, and transportation to the hospital in Barbados.

49. Defendant, CELEBRITY, out of its Miami headquarters paid for Plaintiff, Mr. HODGSON CUNNINGHAM's medical treatment in Barbados utilizing a South Florida bank account.

50. Thereafter, Plaintiff, Mr. HODGSON CUNNINGHAM was returned to Nicaragua for further medical care and treatment.

51. While in Nicaragua, Plaintiff, Mr. HODGSON CUNNINGHAM was evaluated by a neurologist at Vivian Pellas Hospital for a cerebral artery infarct with right upper extremity weakness. Unfortunately, on November 24, 2020, Plaintiff, Mr. HODGSON CUNNINGHAM began to experience seizures again and had to be admitted to the hospital.

52. On January 29, 2021, Plaintiff, Mr. HODGSON CUNNINGHAM was diagnosed with abnormal language function with reduced communication.

53. An MRI done on February 21, 2021, revealed a chronic left middle cerebral artery infarct and an EEG revealed left-sided focal slowing.

54. Surprisingly, on April 30, 2021, Defendant, CELEBRITY's chosen physical therapist found Plaintiff, Mr. HODGSON CUNNINGHAM to be at maximum medical improvement, even though he noted residual speech issues.

55. Only sixteen days later, on May 16, 2021, Plaintiff, Mr. HODGSON CUNNINGHAM had additional seizures and was once again hospitalized.

56. Unfortunately, Defendant, CELEBRITY abandoned Plaintiff, Mr. HODGSON CUNNINGHAM and has left the burden on his family to care for him.

57. On October 17, 2022, after performing a comprehensive neurological evaluation on Plaintiff, Mr. HODGSON CUNNINGHAM, American Board Certified Neurologist, Dr. Kenneth Fischer opined that as a result of his predisposed factors of hypertension and diabetes, being prescribed the unwarranted dangerous medications, specifically *Moxifloxacin* and *Novaminsulfon*, then being ordered to perform unusually heavy labor, are the proximate cause of his stroke. Dr. Fischer opined that Plaintiff, Mr. HODGSON CUNNINGHAM will need ongoing care to ameliorate the substantial effects of the stroke as well as further treatment for his secondary seizure disorder. Dr. Fischer opined that Plaintiff, Mr. HODGSON CUNNINGHAM is not at maximum medical treatment and required additional diagnostic and therapeutic interventions.

58. As a result of the unsafe conditions and prescribed medications which caused his stroke, at the tender age of forty-eight (48), Plaintiff, Mr. HODGSON CUNNINGHAM continues to suffer from convulsions and ischemic episodes. He continues to struggle with serious motor and

cognitive deficiencies and physical problems (including headaches, dizziness and body pain). He is unable to complete basic cognitive tasks like recognizing letters, challenges with short-term memory, frustrations communicating and on occasion unable to recognize family and friends. He also has difficulties with various motor skills (i.e., difficulties speaking, maintaining his balance and walking). Plaintiff, Mr. HODGSON CUNNINGHAM is also unable to care for himself and requires 24-hour monitoring and care. Plaintiff, Mr. HODGSON CUNNINGHAM undergoes physical therapy, motor physiotherapy and speech therapy. He will require further treatment including occupational therapy. The treatment prescribed is in hope of regaining basis motor functions.

59. At all times material hereto, as a result of Defendant CELEBRITY's breach of its nondelegable duties caused Plaintiff, Mr. HODGSON CUNNINGHAM's injuries.

60. At all times material hereto, Defendant, CELEBRITY had notice of the strenuous tasks housekeeping personnel were required to person in sauna like conditions in enclosed areas during the coronavirus pandemic and failed to take proper precautions to protect Plaintiff, Mr. HODGSON CUNNINGHAM.

61. At all times material hereto, Defendant, CELEBRITY had notice of the incompetence of its medical personnel and failed to take proper precautions to protect Plaintiff, Mr. HODGSON CUNNINGHAM.

62. Defendant, CELEBRITY knew and/or should have known of the unsafe condition and failed to correct the condition which resulted in Plaintiff, Mr. HODGSON CUNNINGHAM's injuries.

63. At all times material hereto, Plaintiff, Mr. HODGSON CUNNINGHAM's injuries were reasonably foreseeable and the subject vessel, crew, appurtenances and operations were not reasonably fit for the vessel's intended purpose.

## COUNT I
## UNSEAWORTHINESS

Plaintiff readopts and re-alleges paragraphs 1 to 63, as if stated herein verbatim and further alleges:

64. This action arises as an admiralty and maritime claim under the general maritime law of the United States.

65. On or about the previously stated date, Plaintiff was a member of the crew of Defendant's vessel, which was in U.S. navigable waters.

66. At all times material hereto, the vessel was owned by Defendant, CELEBRITY out of its Miami office. *See*, Box 5 of the Employment Contract dated December 17, 2019 marked as Exhibit 1.

67. Defendant had the absolute nondelegable duty to provide Plaintiff with a seaworthy vessel.

68. On or about the previously stated date, the unseaworthiness of Defendant's vessel was a legal cause of injury and damage to Plaintiff by reason of the following:

   a. Failure to use reasonable care to provide and maintain a safe place to work for Plaintiff;

   b. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the crew members and more particularly the Plaintiff, while working on said vessel;

   c. Failure to use reasonable care to provide Plaintiff with a safe place to work by failing to use reasonable care to maintain the vessel in a safe condition;

   d. Failure to establish a proper and safe method of operation;

  e. Failure to properly assign sufficient crew to perform the tasks performed by hotel personnel including assistant housekeepers;

  f. Implementing unsafe procedures for crew members to carry out the tasks ordered;

  g. Operational negligence on the part of CELEBRITY was pervasive and repeatedly frequently resulted in reported slip and falls in the galley areas;

  h. Failure to take proper work schedule precautions to avoid fatigue among crew members, including Plaintiff;

  i. Failure to have proper lifting and carrying procedures for crew members and improperly requiring crew members to repeatedly lift and carry heavy loads for hours during a day;

  j. Failure to perform occupational studies to avoid or reduce number of injuries to crew members aboard its vessel;

  k. Failure to use reasonable care to provide Plaintiff a safe place to work by failing to warn Plaintiff of the potential dangers;

  l. Failure to follow sound management practices aboard its vessel with the goal of providing Plaintiff a safe place to work;

  m. Failure to provide adequate safety measures to guard against known risks of injury to crew members;

  n. Failure to have a proper, adequate, and safe Safety Management System Manual aboard subject vessel and/or failed to follow it on board the vessel on which Plaintiff served, as referenced by the International Safety Management Code;

  o. Failing to report, investigate, and conduct comprehensive statistics for analysis and publication of all occupational accidents, occupational injuries and diseases as required of all shipowners under the governing MLC (2006) and other international standards; and

  p. Breaching its obligations under the MLC (2006) as the shipowner.

69. Under the general maritime law of the U.S., Defendant, CELEBRITY, as the owner of the subject vessel had the continuing duty to supply a vessel seaworthy in all its parts, including

personnel and gear. This nondelegable duty ensures the vessel seaworthiness which Defendant, CELEBRITY breached.

70. Defendant, CELEBRITY as the shipowner assumes the nondelegable legal obligation and responsibilities under the general maritime law of the U.S. and is subject to MLC (2006) and all its rules and standards.

71. Defendant, CELEBRITY breached its legal and continuous duty to supply a seaworthy vessel and failed to take proper corrective measures to cure a systemic problem with the unsafe method of galley operations.

72. Defendant, CELEBRITY'S failure to supply a vessel seaworthy in all her parts directly caused Plaintiff's injuries. Plaintiff's serious motor and cognitive deficiencies, other physical problems and continued disability were a reasonably probable consequence of the unsafe work conditions and medication provided to him by Defendant's medical personnel caused by the vessel's unseaworthiness.

73. As a direct and proximate result of the unseaworthiness of the Defendant, CELEBRITY'S vessel, the Plaintiff was injured about his body and extremities, suffered pain therefrom, incurred medical expenses in the care and treatment, suffered physical handicap, permanent disability from shipboard employment, lost wages and his working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer losses and impairments in the future.

WHEREFORE, Plaintiff, ELIO ELISEO HODGSON CUNNINGHAM demands judgment against Defendant, CELEBRITY CRUISES INC., for actual and compensatory damages, prejudgment and post-judgment interest, and any further relief this Court deems just.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff, ELIO ELISEO HODGSON CUNNINGHAM, demands a trial by jury of all issues so triable as a matter of right.

Dated: November 4th, 2022

Respectfully submitted,

*Attorney for Plaintiff*

*/s/Alejandro J. Gonzalez*
Alejandro J. Gonzalez, Esq
**GONZALEZ,P.A.**
19 S Krome Ave. Homestead, FL 33030
Email: alex@agonzalezlaw.com
www.agonzalezlaw.com
FL Bar No. 015293

# Exhibit 1

# Employment Contract



# EMPLOYMENT CONTRACT

This Employment Contract is concluded between
sea chefs Cruises Ltd ("the Employer")
sea chefs House 12 Kosta Katselli Street, Agios Athanasios, CY-4102 Limassol – Cyprus
Tel:+357 25 206666, Fax:+357 25 751160, www.seachefs.com

and the Employee whose particulars appear in this Box 1:

| Surname: | HODGSON CUNNINGHAM | First Name: | ELIO ELISEO | Employee Nr: | 8782 |
|---|---|---|---|---|---|
| Date of Birth: | 14 APRIL 1973 | Place of Birth: | R.A.A.S. | Nationality: | NICARAGUA | Sex: | MALE |
| Home Address: | BARRIO 1 DE MAYO CALLE #3 CASA#4., 11112 MANAGUA NICARAGUA | | | Telephone: | 505-57165622 |
| Passport No: | C01764900 – 4 NOVEMBER 2024 | | Seaman's Book No: | BS SRB261892-00  31 DECEMBER 2099 |

**Box 2. Next of Kin (Person to be notified in case of Emergency):**

| Surname: | RIOS DE VEGA | Name: | YELBA GISELA | Relationship: | FIANCEE |
|---|---|---|---|---|---|
| Address: | BARRIO PRIMERO DE MAYO.CALLE #3 CASA#4,  Managua  NICARAGUA | Telephone: | N/A 505-57165622 | | |
| | | Email : | Bbgysielrios@yahoo.com | | |

This is the person you nominate to receive your personal belongings and compensation in case of Emergency   *Yelba Rios*

**Box 3. Employment Details**

| Vessel Name: | MS MEIN SCHIFF TWO | IMO 9783576 | Flag: | MALTA | Position: | ASSISTANT HOUSEKEEPER |
|---|---|---|---|---|---|---|
| Contract Start Date: | 17 JANUARY 2020 | | Period of Employment: | 9 Months | | +/- 4 weeks |
| Date and Place of Joining: | 17 JANUARY 2020 LA ROMANA, DOMINICAN REPUBLIC | | Hours of Work: | 303.10 hours/ Month | | |
| Consolidated Monthly Salary: | USD 1862,00 | Basic Salary: | USD 785,00 | Compensation: | USD 394,00 |
| Guaranteed Overtime: | USD 344,00 | Leave Pay: | USD 157,00 | Compens. Public Holidays: | USD 0,00 |
| Extra Overtime Rate: | USD 0,00  (per hour) | Position Bonus: | USD 182,00 | Wage Scale Adjustment: | USD 0,00 |
| Other: | N/A | Other: | N/A | Other: | N/A |

The Employer reserves the right to transfer the Employee to any other vessel under its management.

**Box 4. Benefits and Terms, Complaints Procedure and Arbitration Agreement**

Health and social benefits, vacation, repatriation, contract termination and all other terms and conditions as per the applicable Collective Bargaining Agreement ("CBA") and any other particulars required by the flag state of the Vessel.
The CBA contains a complaints procedure and an arbitration agreement which exclude the jurisdiction of national courts and tribunals.

**Box 5. MLC responsible Company and Ship Owner's Details**

| Organization that has agreed to take over the duties and responsibilities imposed on Ship-Owners as defined in and in accordance with MLC, 2006 | Name: | Celebrity Cruises INC |
|---|---|---|
| | Address: | 1050 Caribbean Way, Miami, FL 33132  USA |
| Registered Ship Owner | Name: | TUI Cruises GmbH |
| | Address: | Heidenkampsweg 58, 20097 Hamburg, Germany |

**Box 6. Other**

| Attachments | 1. Terms & Conditions | N/A | 2. Collective Bargaining Agreement | X | 3. Job Description | X | 4. Other | N/A |
|---|---|---|---|---|---|---|---|---|

Signed on behalf of the Employer

*[signature]*

Erika Bengtsson - Crewing Manager/Officer
Place: Limassol, Cyprus                 Date: 17.12.2019
Email: eb@seachefs.com

I, acknowledge that I have read, and understood the Terms and Conditions contained in the relevant CBA and agree to be bound by the terms and conditions of employment as outlined therein.

*Elio Hodgson*
Employee's Signature

*Elio Hodgson*
Employee's Name
Place: Managua Nicaragua    Date: 20-12-2019
Email: Bbgysielrios@yahoo.com

**Remarks**
1 Original of contract to remain in possession of the Employee
1 Original of contract to be sent back to Employer
1 Copy to Vessel (Crew Purser's Office)
1 Copy to Manning Agent (if recruited by Manning Agent)