UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY
CASE NO.: 1:22-CV-23621-PAS

ELIO ELISEO HODGSON CUNNINGHAM

    Plaintiff,

v.

CELEBRITY CRUISES, INC.,

    Defendant.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION

**COMES NOW**, Plaintiff, ELIO ELISEO HODGSON CUNNINGHAM (hereinafter "Mr. Cunningham", or "Seafarer"), by and through undersigned counsel, hereby files this his Response Defendant's Motion to Dismiss, and to Compel Arbitration (ECF Doc. 11), and states as follows:

## SUMMARY OF ARGUMENT

Mr. Cunningham's *sole* cause of action against Defendant, CELEBRITY CRUISES, INC. (hereinafter "Celebrity" or "owner") is for *unseaworthiness* of Defendant's vessel. As clearly pled, Celebrity is being sued for having, accessing, and administering *highly dangerous medications* aboard its vessel (and in its medicine chest) to the Plaintiff. The U.S. Federal Drug Administration ("FDA") had assigned the medications at issue its *highest warning* on any drug, known as a "*Black Box*"[1] warning along with a "*Restrictive Use Warning*"[2] Plaintiff was administered multiple *Black*

---

[1] FDA "Black Box" warnings are the most serious warning to alert doctors and patients about drug effects that may be danagerous.
[2] FDA "Restrictive Use Warning" identifies that a drug can cause serious side effects…including increase the pressure inside patients head.

[1]

*Box* warning medications which (consistent with the medications warnings) resulted in Mr. Cunningham's internal cranial bleeding, stroke, convulsions on the vessel and further ischemic episodes ever since.

As a result of the unseaworthy condition, Mr. Hodgson was hospitalized for with sequelae of conditions relating to his stroke, including aphasia, pneumonia, right hemiparesis, and facial paralysis. Since being repatriated to Nicaragua (abandoned without daily living aide) where he continued to struggle *to regain basic motor functions, including ability to walk or speak.*

As a matter of law, Defendant's compound motion[3] must be *denied* as:

1. Defendant misrepresents the four corners of the Plaintiff's single count *Unseaworthiness* Complaint, which alleges that Celebrity (as shipowner) breached its non-delegable duty to provide Plaintiff with a seaworthy vessel upon which to work and live free from being **prescribed and administered dangerous medications**.

2. Defendant *admits or does not refute* that:

(a) Celebrity is not Plaintiff's employer. *See*, Def. Motion (ECF Doc.11) pp. 1, 4¶11,7.

(b) Celebrity is not the subject vessel's operator. *Id.*

(c) Celebrity is not a party to the Plaintiff's Employment Agreement, which does not contain an arbitration provision. *Id.*

---

[3] Defendant asserts that its motion is a 9 U.S. § 206 (Order to Compel Arbitration; appointment of arbitrators) and a Fed. R. Civ. P., Rule 12 (b) motion. However, nothing in Defendant's motion asserts, alleges, or even contemplates with any specificity any aspect of Rule 12 (b) as it relates to possible deficiencies in Plaintiff's Complaint. Defendant raised a Rule 12 (b) motion but does not allege or present any argument that this Court lacks subject-matter jurisdiction, (Rule 12(b)(1)), lacks personal jurisdiction (Rule 12(b)(2)), or (Rule 12(b)(6)) failure to state a claim upon with relief can be granted. Therefore, Defendant exhausts its ability to raise any future Rule 12 (b) motion.

(d) <u>Celebrity is *not a party* to a Collective Bargaining Agreement ("CBA") referenced in Plaintiff's Employment Agreement</u>, which again Defendant was not privy to. *Id.*

(e) <u>Celebrity there is no agreement in writing between Defendant and Plaintiff agreeing to arbitrate any dispute</u>. *Id.* and,

(f) <u>Celebrity does not refute that it is the owner of the MEIN SCHIFF 2.</u> *See*, Def. Motion (ECF Doc.11)

3. Plaintiff accessing or being administered *highly dangerous medications* aboard Defendant's vessel (and contained within its medicine chest), "***does not relate to, arise out of, or have a connection with the crew agreement, the employment terms, or the services [plaintiff] performed for [the cruise line]***." *Jane Doe v. Princess Cruise Lines, Ltd.*, 696 F. Supp. 2d 1282 (S.D. Fla. 2010), *see also, Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1213, n.9 (11 th Cir. 2011) (emphasis added).

## MATERIAL FACTS
## (FOUR-CORNERS OF PLAINTIFF'S COMPLAINT)

1. At all times material hereto, Plaintiff, Mr. HODGSON CUNNINGHAM worked aboard Defendant, CELEBRITY's owned vessel, the *MV MEIN SCHIFF 2*. *See*, Seaman's Compl. (ECF Doc. 1) ¶ 5.

2. At all times material hereto, the *MV MEIN SCHIFF 2* repeatedly sailed in United States territorial waters, regularly calling upon several east coast U.S. ports, including the Port of Miami in Florida. *Id.* ¶ 9.

3. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* handles all aspects of compliance with the MLC (2006), the governing international standards on ship safety, human security, and quality ship management, out of its Miami headquarters. *Id.* ¶14.

4. At all times material hereto, Defendant, CELEBRITY as the shipowner of the *MV MEIN SCHIFF 2* must comply with the MLC (2006). *Id.* ¶15.

5. Defendant, CELEBRITY breached its duty and created an unseaworthy condition, rendering the subject vessel unfit for her intended purpose and failed to provide Plaintiff with enough seafarers to complete tasks assigned, work areas with proper air circulation, and competent medical personnel. *Id.* ¶22.

6. Defendant, CELEBRITY further breached its nondelegable duty to provide Plaintiff with a safe workplace which rendered the vessel unseaworthy and caused and/or contributed to the injuries, damages, pain and suffering experienced by the Plaintiff. *Id.* ¶23.

7. In March 2020, Plaintiff, Mr. HODGSON CUNNINGHAM visited the ship's infirmary complaining of a cough, congestion, and headaches. Based on his complaints, the ship's medical personnel ordered him to take a combination of medications, including *Novaminsulfon 500 mg* (an anti-inflammatory) and *Moxifloxacin Hexal 400 mg* (a powerful antibiotic). *Id.* ¶32.

8. Unfortunately, *Moxifloxacin* is a dangerous medication and is known to cause serious health risks. In fact, The U.S. Federal Drug Administration ("FDA") has assigned *Moxifloxacin* its highest warning on any drug, known as a "black box" warning. The warnings from the FDA included a risk of central nervous system effects, including seizures, convulsions, and increased pressure in the patient's head. The FDA also noted that the drug was also known to be dangerous for persons with other health conditions. It warned that the drug could cause people with diabetes to develop low blood sugar which could result in a coma and/or death. It also warned that the drug could cause seizures and change a patient's heart rhythm. As a result of the multiple warnings, the FDA recommended that this drug be used only to treat certain specific infectious conditions if no other treatment option existed. *Id.* ¶33.

9. Additionally, Defendant, CELEBRITY not only prescribed this dangerous drug, it also combined the drug with an anti-inflammatory agent that is banned in many countries including the United States and Western Europe because of toxic side effects. Based on FDA warnings, taking *Moxifloxacin* with certain medication, including NSAIDs, could increase potency and the risk of side effects. Despite this, the dangerous combination was prescribed to Plaintiff, Mr. HODGSON CUNNINGHAM. *Id.* ¶34.

10. At all times material hereto, Defendant, CELEBRITY's vessel had inadequately trained crew, including its medical personnel which prescribed dangerous medication to seafarers on its vessels, including Plaintiff, Mr. HODGSON CUNNINGHAM. *Id.* ¶42.

## ARGUMENT

Given the foregoing facts, requirements and failures, Celebrity's assertions that it somehow entitled to arbitrate Plaintiff's claims fails as a matter of law.

### I. DEFENDANT'S "RULE 12 (B)" MOTION IS PROCEDURALLY DEFICIENT

Defendant has not raised a viable ground sufficient to justify dismissal of Plaintiff's case. As an initial matter, although titled a motion to dismiss, the motion includes matters outside the pleadings, which are normally considered in a motion for summary judgment. *See*, Fed. R. Civ. P. 12 (d). The Federal Rules of Civil Procedure allow for dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted. *Id.* A motion to dismiss brought pursuant to this Rule "*test the legal sufficiency of a claim*". *See, Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014). In light of the court's duty to construe liberally pleadings and motions, the court should consider Defendant's motion under the law as a motion for summary judgment. *See*, *United States v. Gibbs*, 917 F.3d 1289, 1293, n.1 (11th Cir. 2019), *see also Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003). Any motion for summary

judgment is premature as discovery has not been had in this case. In considering a motion to dismiss, a court is generally restricted to reviewing the facts in the four corners of the complaint, including attachments or exhibits. *See, Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006). Thus, the entirety of Defendant's exhibits in support of its motion, including the Collective Bargaining Agreement, Sworn Declaration of irrelevant testimony containing conclusory legal conclusions, should be struck, or disregarded by the Court as it is well-beyond the four corners of the complaint. *See*, Def's Motion (ECF 11-1).

Accordingly, since Defendant has failed to raise a viable ground sufficient to justify dismissal of Plaintiff's case, this Honorable Court should deny Defendant's Rule 12 (b) motion.

## II. Defendant's "9 U.S.C. § 206" Motion Also Fails As a Matter of Law

"Pursuant to Rule 12 (b) and 9 U.S.C. § 206", Defendant seeks for this Honorable Court to "*compel him to participate in the binding arbitration instituted in Cyprus.*" *See*, *Id.* p.1. According to 9 U.S.C. § 206:

> **<u>A court having jurisdiction under this chapter</u>** may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United states. Such court they also appoint arbitrators in accordance with the provisions of the agreement.

*See*, 9 U.S.C. § 206. (emphasis added).

The burden of establishing a basis for such relief rests squarely on Celebrity as the party that seeks to compel arbitration. *See*, *Wexler v. Solemates Marine, Ltd.*, 2017 WL 979212, *4 (S.D. Fla. March 14, 2017). Plaintiff contends that indeed no agreement to arbitrate between Plaintiff and Celebrity exists and that Plaintiff's claims do not relate to an arbitration agreement falling under The Convention. Accordingly, the Court should find that subject-matter jurisdiction

is lacking and compelling Plaintiff otherwise would exceed the bounds of any arbitration agreement.

To be clear, pursuant to Defendant's motion, Defendant *admits or does not refute* that:

(a) <u>Celebrity is not Plaintiff's employer.</u> *See*, Def. Motion (ECF Doc.11) pp. 1, 4¶11,7

(b) Celebrity is not the subject vessel's operator. *Id.*

(c) Celebrity is not a party to the Plaintiff's Employment Agreement, which does not contain an arbitration provision. *Id.*

(d) Celebrity is not a party to a Collective Bargaining Agreement ("CBA") referenced in Plaintiff's Employment Agreement, which again Defendant was not privy to. *Id.*

(e) Celebrity there is no agreement in writing between Defendant and Plaintiff agreeing to arbitrate any dispute. *Id.* and,

(f) Celebrity does not refute that it is the owner of the MEIN SCHIFF 2. See, Def. Motion (ECF Doc.11)

To establish subject matter jurisdiction under 28 U.S.C. § 206, Celebrity must satisfy all four jurisdictional pre-requisites: 1) there is an agreement in writing to arbitrate the dispute within the meaning of the Convention; 2) the agreement provides for arbitration in the territory of a Convention signatory; 3) the agreement arises out of a commercial legal relationship; and 4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294, 1295 n. 7 (11th Cir. 2005). Where these prerequisite jurisdictional requirements are not met, compelling arbitration is improper. *See*, *Wexler v. Solemates Marine, Ltd.*, 2017 WL 979212, *4 (S.D. Fla. March 14, 2017). It is well-established in the Eleventh Circuit that these four (4) requirements are jurisdictional and *strictly enforced* and an *absence of any one requirement*

*deprives* the Court of subject matter jurisdiction. *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3D 1286, 1290-91 (11th Cir. 2004).

Celebrity has not established any of the *first three (3) prerequisite jurisdictional requirements*. As noted above, Celebrity relies solely upon its purported CBA[4] and Plaintiff's Employment Contract with Sea Chefs to invoke this Court's jurisdiction. Celebrity has not presented to this Court any arbitration agreement between itself and Plaintiff, an arbitration agreement which embraces Plaintiff's claims, or an agreement which calls for arbitration in a Convention signatory. Celebrity was not privy to any arbitration agreement involving Plaintiff whatsoever, specifically that of the Employment Contract or the purported CBA. *See*, (ECF Doc. 11-1).

### A. Defendant Misrepresents Plaintiff's Cause of Action

Defendant asserts, without justification, that "Plaintiff, Hodgson Cunningham is suing Celebrity for unseaworthiness based on the statement in his employment contract that Celebrity is the "MLC Owner". *See*, Motion (ECF Doc. 11) p 1. No. That is incorrect and ignores the clearly asserted allegations of Plaintiff's Complaint. Plaintiff is suing Celebrity because Celebrity was the owner of an *unseaworthy* vessel. *See*, Seaman's Compl. (ECF Doc. 1) ¶¶ 14,15.

Defendant further asserts, without justification, that "Celebrity's sole connection to Hodgson Cunningham is the fact that its name appears on Hodgson Cunningham's employment contract." No. That is incorrect and ignores the clearly asserted allegations of Plaintiff's

---

[4] In fact, Celebrity submits a purported CBA (ECF Doc. 11-1) which is not Celebrity or even TUI, but rather Sea Chefs Cruises, Ltd. and *Vere Inte Dienstleistungsgewerkschaft*, differs from the CBA attached to and in support of Defendant's Motion to Dismiss and Compel Arbitration [D.E. 13-2].

Complaint. Defendant's sole connection to Plaintiff is that it was the owner of a vessel that allowed, accessed, and placed onboard its vessel ***dangerous medications***.

Defendant also makes conclusory statements which ignore the pleadings before this Honorable Court. Defendant asserts that: "To make his claims against Celebrity, Hodgson Cunningham has to rely…(b) on the specific language of the employment agreement, and (c) on a set of factual unseaworthiness allegations that are inseparable from the negligence allegations he would assert against his employers." No. This is incorrect.

*First*, there is nothing in the Plaintiff's employment agreement that calls for arbitration for Celebrity or anyone else. *Second*, the "specific language" that call for arbitration is contained in a CBA that Celebrity has no connection or affiliation with. *Third*, even assuming that the Court were to consider the CBA, there is no conceivable or reasonable interpretation of the CBA's language that would support that Defendant's contention. The CBA, clearly states:

> 5.   Arbitration
>
> a) If not resolved by the Union, the Company, and/or the Seafarer, all claims, grievances, and ***disputes of any kind relating to, or in any way connected with, the Seafarer's service to the Complaint***….against the Seafarer, Company, Master, Ship Owner…shall be referred to and resolved exclusively by binding arbitration…

*See*, CBA (ECF Doc. 11-1) p. 39 (emphasis added).

Again, the Plaintiff should be allowed to conduct discovery on this matter to properly defend against Defendant's motion for summary judgement (which this motion really is)[5]. That said, this is language that has been determined to be limited in its interpretation. There is no reasonable interpretation of this provision (*i.e., "relating to"* or *"connected with"*) that would find that

---

[5] Plaintiff reserves the right to present Plaintiff's Motion for Summary Judgement, upon completion of discovery to properly present evidence of the deadline mediations aboard Celebrity's vessel.

[9]

Plaintiff's claims against Defendant ***relates to, arises out of and/or derives*** from his employment agreement with a third-party. In fact, *highly dangerous medications* aboard Defendant's vessel (and contained within its medicine chest), has nothing to do with his employment and could have been administered to anyone on the ship.

The existence, presence, access and administration of *highly dangerous medications* aboard Defendant's vessel "***does not relate to, arise out of, or have a connection with the crew agreement, the employment terms, or the services [plaintiff] performed for [the cruise line]***." *Jane Doe v. Princess Cruise Lines, Ltd.*, 696 F. Supp. 2d 1282 (S.D. Fla. 2010), *see also, Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1213, n.9 (11th Cir. 2011) (emphasis added).

*Fourth*, Plaintiff's potential claims for disability, or negligence against his employer have nothing to do with Defendant and are not intertwined with Plaintiff's current unseaworthy cause of action. The only communality factually is that had Celebrity's vessel did not possess, and/or access highly dangerous medications (and combination of medications) aboard Celebrity's vessel, Mr. Cunningham would be able to speak for himself, be self-sufficient or ambulate.

This arbitral provision is similar, if not exact, to the provision contemplated by Judge Lawrence King and who denied Princess Cruise Line's Motion to Compel Arbitration. *Jane Doe v. Princess Cruise Lines, Ltd.*, 696 F. Supp. 2d 1282 (S.D. Fla. 2010), *see also, Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1213, n.9 (11th Cir. 2011) (emphasis added). The arbitration provision in that case stated:

> [T]he Company and crew member agree that <u>any and all disputes, claims, or controversies whatsoever</u> (whether in contract, regulatory, tort or otherwise and whether pre-existing, present or future and including constitutional, statutory, common law, admiralty, intentional tort and equitable claims) <u>relating to or in any way arising out of or connected with the Crew Agreement</u>, these terms or services performed for the company,... between the crew member and the company or others, including against the master, ship owner, vessel, vessel operator, charter, or

> other third party, including also but not limited to, Princess Cruises[6], P &O Cruises Australia, and Cunard Line, <u>shall be referred to and resolved exclusively by binding arbitration</u>…

*Id.* p. 20 (underlined by Court).

Accordingly, the Eleventh Circuit noted that Judge King (preceding District Court Judge) refused to interpret the scope of the arbitration provision "*so broadly as to encompass any claim related to Jones' employer, or any incident that happened during her employment*" because "*that is not the language of the contract*". *Id.* at 241. Therein, Princess tried to "*sweep all of Doe's claims into the scope of the arbitration provision*" that "*any claim that Doe had against her employer would be subject to arbitration because the ship was the "frame-work of [her] existence*" *Id.*

Ironically, the Eleventh Circuit gave the cruise line the language back in 2011, that would allow for an expansive interpretation. However, Sea Chef [7] never implemented the verbiage set forth by the Appellate Court. The Eleventh Circuit said:

> If the cruise line had wanted a broader arbitration provision, it should have left the scope of it at "**any and all disputes, claims, or controversies whatsoever**" instead of including the limitation that narrowed the scope to only those disputes, claims, or controversies "<u>**relating to, or in any way arising out of, or connected with the Crew Agreement**</u>, these terms, or services performed for the Company." That would have done it, but the company did not do that. Instead, after including that limiting language, it now argues that we should ignore the limitation and force Doe to **arbitrate all disputes, claims, or controversies without regard to whether they relate to, arise out of, or are connected with her employment or her service as an employee**. <u>**That we cannot do.**</u>

*Id.* at 27. (emphasis added).

Therefore, the Eleventh Circuit has already spoken and instructed the cruise line employers that the Eleventh Circuit will refuse to apply such an expansive interpretation to the same

---

[6] In fact, the only difference herein is that the shipowners were enumerated the above referenced arbitral provision (which the arbitral provision at issue does not enumerate Celebrity).
[7] Sea Chef not Celebrity, because Sea Chef was Plaintiff's employer.

[11]

arbitration provision. But again, the Eleventh Circuit refused to do so, despite the existence of a clear contractual relationship between the Seafarer (Jane Doe) and Employer (Princess).

Here, we do not even have that. What we have is a third-party owner of an unseaworthy vessel (who has no privy of a service agreement, no agreement of any kind, or even a relationship with a crew member) seeking to expand an arbitral provision that was limited to claims related to or arising from his employment. Had Celebrity been Plaintiff's employer, we believe that Celebrity would also meet the same fate as Princess. Instead of addressing the clear terms of the CBA, which again, it was not privy to, or bargained for, Defendant rather cites cases that do not address or evaluate the specific contractual terms as the Eleventh Circuit did in the *Doe v. Princess* case.

Plaintiff is graced with this Honorable Court's ability and willingness to dive into the contracts clear terms and prays that it applies the plain meaning rule to the interpretation of said contractual terms. The clear language of the *Doe v. Princess* arbitral provision in comparison with the arbitral provision at issue, show that there is no conceivable manner in which Plaintiff's claims against Celebrity for unseaworthiness are to be arbitrated.

Contrary to Defendant's arguments, Plaintiff contends that *dangerous medications* can kill crew members and passengers alike. Being free from *dangerous medication* that can kill crew members are matters that have no connection to his duties or in any way related to his service on the ship. Certainly, there is no connection to the purported arbitral provision.

### B.  FEDERAL COURT SHOULD APPLY STATE LAW IN DETERMINING ARBITRABILITY OF A DISPUTE

The U.S. Supreme Court has noted that "the first principle… is that 'arbitration is a matter of contract any party cannot be required to submit to arbitration any dispute which he is not agreed so to submit.' [citation omitted]. This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such

grievances to arbitration. *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 648 (1986). "The second rule, which follows inexorably from the first, is the question of arbitrability -- whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance -- is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agree to arbitrate is to be decided by the court, not the arbitrator. *Id*. at 649. In the only collective bargaining agreement presented to this court[8], the parties (Celebrity and Plaintiff) did not "clearly and unmistakably" provide that an arbitrator was to decide the issue of arbitrability. Absent a clear and unmistakable provision to that effect, the issue of whether Celebrity's grievances should be submitted to arbitration is for this Court, not an arbitrator. "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot proceed judicial determination that is the collective-bargaining agreement does in fact create such a duty." *Id*.

The US Court of Appeals for the 11th Circuit addressed this very issue in *American Express Financial Advisors, Inc. v. Makarewicz*, 122 F.3d 936 (11th Cir. 1997), and stated:

> the FAA does not require parties to arbitrate when they have not agreed to do so,… nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. *Volt Info. Sciences, Inc., v. Board of trustees of Leeland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255 (1989). [citation omitted]. Because parties are free to structure their arbitration agreements as they see fit "they may limit by contract the issues which they will arbitrate." *Id* at 479. "When deciding whether the parties agreed to arbitrate a certain matter… Courts generally… Should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

---

[8] The CBA was introduced and presented to this Court by Defendant, which is outside the four corners of the Plaintiff's Complaint. See, Motion (ECF 11-1).

Pursuant to Florida law, the terms of the contract should control whether the rights and interests of the parties are clearly stated. Moreover, U.S. District Courts in Florida have likewise held that the issue of whether parties have agreed to arbitrate a claim is to be decided based upon Florida state law. *Johns v. Taramita, Inc.*, 132 F.Supp. 2d 1021 (S.D. Fla. 2001) ("[w]hen deciding whether parties have agreed to arbitrate a dispute, however, courts ordinarily should rely on state law principles that govern the formation of contracts."), *see also Sims v. Clarendon National Insurance Co.*, 336 F. Supp. 2d 1311 (S.D. Fla. 2004).

### C. CELEBRITY: CANNOT FORCE PLAINTIFF TO ARBITRATION

Celebrity acknowledges that it is *not* a party to any of the documents it relies upon as its purported arbitration agreement. Yet, Celebrity inexplicably represents to this Honorable Court that a *one-page* Employment Contract (between Sea Chefs and Plaintiff[9]) somehow satisfies the jurisdictional prerequisites upon this Court. Moreover, Celebrity improperly alleges that the purported Employment Agreement (for which it was not a party to) somehow incorporated by reference a purported CBA (for which it was not a party to or bargained for). The purported CBA

---

[9] Celebrity further admitted that it initiated an arbitral proceeding against the Plaintiff in Cyprus, applying Cyprus law, and asserting that it was entitled to the benefits of Cyprus law because Celebrity said so. Plaintiff has never initiated any claim against Celebrity, or any other entity, and will not do so until ordered by this Court. Cyprus does not allow for contingency fee arrangements and the Plaintiff, a disabled ward of this Court, is unable to afford counsel in that jurisdiction. Celebrity has further admitted that it initiated arbitration as a spear rather than as a shield, and further did so to avail itself from any liability strictly, as a vessel owner. Celebrity has now introduced evidence before this Court that despite the representations made in its Motion (admittedly lacked any connection to Mr. Cunningham, no evidence of any connection to Cyprus laws, and never selected Cyprus as the choice of law in any agreement, etc.) yet Celebrity initiated arbitration and selected the forum to strip the Seafarer of his right to purse this case against the unseaworthy owner. Celebrity's abusive initiation of arbitration is precisely why this Honorable Court should interpret the governing language, and Plaintiff's Complaint.

assigned solely by Sea Chefs' personnel and not by Celebrity. Thus, the signature of the purported CBA then, by the plain terms of the agreement, is provided only on behalf of Sea Chefs.

Celebrity was well aware of this material fact when it sought to convince the Court that the jurisdictional requirements set forth were satisfied. However, on its face the arbitration clause (which it relies upon) shows that Celebrity lacked an objective reasonable basis for that contention. It is well-established that "The Convention…imposes a prerequisite on a party asking the Court to compel arbitration: it requires the party bringing the Court the written agreement." *Czarina, LLC, supra* 358 F.3d at 1290-91 (11th Cir. 2004) (emphasis added). As noted above, Celebrity has not satisfied its obligation that it has an agreement to agree to arbitrate that would embrace and incorporate the claims asserted by Plaintiff against Celebrity. "As a threshold matter, 'under…The Convention 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' ***it***." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213, n. 9 (11th Cir. 2011) (emphasis added).

## **CONCLUSION**

As noted above, Celebrity's failures and inability to satisfy the relevant jurisdictional prerequisites, and must, therefore deny Celebrity's motion.

Respectfully submitted,

*/s/Alejandro J. Gonzalez*
Alejandro J. Gonzalez, Esq.
Florida Bar No. 015293
**GONZALEZ, P.A.**
19 S. Krome Avenue
Homestead, FL 33030
Tel: (786) 429-1511
alex@agonzalezlaw.com
info@agonzalezlaw.com
Attorney for Plaintiff Seafarer

Dated: February 24, 2022

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 24, 2023, the foregoing was filed with the Clerk of Court using the CM/ECF system and upon counsel of record.

*/s/Alejandro J. Gonzalez*
Alejandro J. Gonzalez, Esq.
Florida Bar No. 015293
